# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MICHAEL LEE TOWE,

    *Petitioner*,

vs.

DIRECTOR, N.D.O.C., *et al.*,

    *Respondents.*

2:07-cv-00652-KJD-PAL

ORDER

This represented habeas matter under 28 U.S.C. § 2254 comes before the Court on respondents' motion (ECF No. 58) to dismiss, which seeks the dismissal of Grounds 1, 2(A), 2(C) and 4 as procedurally defaulted and Ground 3 as unexhausted.

## *Background*

Petitioner Michael Lee Towe seeks to set aside his 2005 Nevada state conviction, pursuant to a guilty plea, and as amended, of attempt lewdness with a child under the age of 14. Petitioner received a sentence of 24 to 60 months imprisonment concurrent with his sentence in a DUI case as well as a special sentence of lifetime supervision.

Petitioner challenged the conviction in a *pro se* state post-conviction petition, and he thereafter timely sought federal habeas relief. Following appointment of counsel and the filing of a counseled amended petition (ECF No. 25), the Court held on a motion to dismiss by respondents, *inter alia*, that Grounds 1, 2(A), 2(C) and 4 were unexhausted. The Court granted petitioner a stay to allow him an opportunity to exhaust the claims in state court.

On June 12, 2014, the Supreme Court of Nevada affirmed the denial of relief on petitioner's counseled second state post-conviction on the following basis:

> . . . . On appeal, appellant argues that the district court erred in denying his petition as procedurally barred. We note, however, that at the time appellant filed his petition in the district court, he had expired his sentence of imprisonment and was subject only to lifetime supervision. A person on lifetime supervision may not file a post-conviction petition for a writ of habeas corpus because he is not under a sentence of death or imprisonment as required by NRS 34.724. *See Coleman v. State*, 130 Nev. ___, ___, 321 P.3d 863, 867 (2014). Therefore, because appellant did not meet the imprisonment requirement of NRS 34.724, he was not eligible for post-conviction habeas relief. *See id.* For this reason[FN1], we
>
> ORDER the judgment of the district court AFFIRMED.
>
> [FN1] Although the district court incorrectly addressed the procedural bars, we nevertheless affirm because the district court reached the correct result in denying the petition. *See Wyatt v. State*, 86 Nev. 294, 298, 468 P.2d 338, 341 (1970) (holding that a correct result will not be reversed simply because it is based on the wrong reason).

ECF No. 51, Ex. 85.[1]

In the present motion to dismiss in this reopened federal matter, respondents contend, first, that Grounds 1, 2(A), 2(C) and 4 are procedurally defaulted under federal law because the claims could have been presented to the Supreme Court of Nevada previously but now cannot be considered by the state courts because he has discharged his sentence. Respondents contend, second, that the challenge to his special sentence of lifetime supervision in Ground 3 is unexhausted. Respondents maintain that Ground 3 is

---

[1] Petitioner's sentence had not expired at the time that he filed the federal petition, and the custody requirement for federal habeas jurisdiction therefore clearly has been satisfied, even without also taking into account the special sentence of lifetime supervision. *E.g., Carafas v. LaVallee*, 391 U.S. 234, 238-40 (1968) (petitioner who filed federal petition before expiration of sentence was in custody for purposes of federal habeas jurisdiction regardless of whether the sentence expired after the petition was filed). Further, the continuing collateral consequences of the conviction, including but not limited to the special sentence of lifetime supervision, prevent the matter from having become moot following the expiration of the 24 to 60 month sentence. *E.g.,* 391 U.S. at 237-38. *Cf. Goforth v. Chock*, No. 2:06-cv-00303-RCJ-RJJ, ECF No. 19, at 3-4 (D. Nev., May 18, 2007)(discussing the differences between a special sentence of lifetime supervision and a simple lifetime registration requirement vis-à-vis a petitioner being in custody for purposes of federal habeas jurisdiction).

-2-

unexhausted because (a) the Supreme Court of Nevada denied relief on the first state post-conviction petition under N.R.S. 34.810(1)(a) on the basis that the claim was outside the scope of claims reviewable in a state habeas proceeding following a guilty plea, and (b) the 2014 *Coleman* decision cited in the order quoted above purportedly identifies other potential procedural avenues for challenging a special sentence of lifetime supervision.[2]

Petitioner contends as to Grounds 1, 2(A), 2(C) and 4 that he can establish cause and prejudice excusing any otherwise viable procedural default of the claims pursuant to *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), because he was not appointed state post-conviction counsel on his first state post-conviction petition. Petitioner contends that respondents have waived all defenses now raised as to Ground 3 because the Court's initial December 18, 2007, scheduling order required respondents to raise all affirmative defenses to the claims asserted in their initial motion to dismiss rather than serially in successive motions to dismiss. Respondents did not challenge the exhaustion of Ground 3 prior to the stay.

The parties' remaining subsidiary contentions are noted in the discussion below.

### *Governing Law*

Under the procedural default doctrine, federal review of a habeas claim may be barred if the state courts rejected the claim on an independent and adequate state law procedural ground. Review of a defaulted claim will be barred even if the state court also rejected the claim on the merits in the same decision. Federal habeas review will be barred on claims rejected on an independent and adequate state law ground unless the petitioner can demonstrate either: (a) cause for the procedural default and actual prejudice from the alleged violation of federal law; or (b) that a fundamental miscarriage of justice will result in the absence of review. *See, e.g., Bennet v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003).

To demonstrate cause, the petitioner must establish that some external and objective factor impeded his efforts to comply with the state's procedural rule. *E.g., Murray v. Carrier*,

---

[2] Respondents contended initially in the motion to dismiss that Ground 3 was procedurally defaulted or in the alternative unexhausted. In their reply, they withdrew the procedural default argument and argued exclusively that Ground 3 was unexhausted. See ECF No. 68, at 9.

477 U.S. 478, 488 (1986); *Hivala v. Wood*, 195 F.3d 1098, 1105 (9th Cir. 1999). To demonstrate prejudice, he must show that the alleged error resulted in actual harm. *E.g., Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). Both cause and prejudice must be established. *Murray*, 477 U.S. at 494.

In *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), the Supreme Court reaffirmed the general rule established in *Coleman v. Thompson*, 501 U.S. 722 (1991), that cause and prejudice may not be established based upon a failure of state post-conviction counsel to raise claims, subject only to a narrow exception to that general rule carved out in *Martinez*. That narrow exception, as extended in the Ninth Circuit, allows a petitioner to establish cause for the failure to raise claims of ineffective assistance of trial or direct appeal counsel based upon a lack of or inadequate assistance of state post-conviction counsel in an initial-review collateral proceeding. *See* 132 S.Ct. at 1320; *Ha Van Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013). A state post-conviction appeal is not an initial collateral review proceeding under *Martinez*, and a lack of or inadequate assistance of state post-conviction appeal counsel therefore does not provide a basis for cause under the decision. *See* 132 S.Ct. at 1316 & 1320. A lack of or inadequate assistance of initial-review state post-conviction counsel further does not provide a potential basis for cause under *Martinez* for a failure to raise independent substantive claims as opposed to ineffective-assistance claims. *See, e.g.,* 132 S.Ct. at 1319.

### *Discussion*

### *Procedural Default as to Grounds 1, 2(A), 2(C) and 4*

The application of federal procedural default doctrine to the procedural posture presented is not challenged herein, and the Court therefore proceeds accordingly.[3]

////

---

[3] *Cf. Ingebretson v. Palmer*, No. 3:07-cv-00251-LRH-RAM, ECF No. 116, at 5 (D. Nev., Sept. 9, 2015) (applying procedural default doctrine where a state post-conviction petition no longer could be pursued due to sentence expiration); *see also Coleman*, 501 U.S. at 729-32 (the underpinnings of the procedural default doctrine are grounded in federalism, as the federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment"); *id.*, at 750 (recognizing the important interest in finality served by state procedural rules).

Respondents contend that, under *Martinez*, petitioner cannot establish that the lack of state post-conviction counsel caused his failure to secure review of his claims under state procedural rules "because he fails to establish a causal nexus between the lack of post-conviction counsel during his first state habeas petition and his failure to file a petition presenting the claims . . . prior to the expiration of his sentences of imprisonment."[4]

The Court is not persuaded. If a petitioner pursues a first state post-conviction and counsel is not appointed, the Court is satisfied that – both as a practical and a legal matter under *Martinez* – the lack of counsel constitutes "cause" for his failure to assert subsequent claims that are found to be procedurally defaulted when he later seeks to pursue the claims. The causal nexus is established by the not unreasonable assumption that, if competent counsel had been appointed on the first petition, counsel would have presented the subsequent claims instead in the first petition and thereby avoided the claims thereafter becoming procedurally unavailable (whether by expiration of the underlying sentence, expiration of a limitations period, or otherwise). Under the strained logic of respondents' reading of *Martinez* and prior law, the absence of state post-conviction counsel potentially would provide cause for only a procedural default expressly based specifically on the failure to raise a claim previously that could have been raised in the prior petition.[5] The Court does not read the equitable rule established by *Martinez* that narrowly in cases where a petitioner files a timely first state petition and then is not appointed counsel on the first petition.[6]

---

[4]ECF No. 68, at 4.

[5]*Cf.* N.R.S. 34.810(1)(b)(2): "The court shall dismiss a petition if the court determines that . . . [t]he petitioner's conviction was the result of a trial and the grounds for the petition could have been . . . [r]aised in a direct appeal or a prior petition for a writ of habeas corpus or postconviction relief . . ."

[6]The Court is not suggesting that absence of appointed counsel constitutes cause under *Martinez* for a failure to file a timely *first* state petition. Nothing in *Martinez* suggests that there is any direct or indirect obligation on the part of the states to appoint pre-filing counsel generally for inmates to prepare and timely file a first state petition. Rather, *Martinez* addresses the situation where either counsel is not appointed once a first petition is filed or the counsel appointed allegedly provides inadequate assistance. In that situation, the Court holds that potential cause under *Martinez* is not limited to procedural defaults based solely on a rule such as N.R.S. 34.810(1)(b)(2) barring claims that could have been raised in the prior proceeding.

Turning to the specific claims at issue,[7] petitioner alleges in Ground 1 that he was denied due process of law in violation of the Fifth and Fourteenth Amendments because his guilty plea was not entered knowingly, intelligently and voluntarily because trial counsel unduly pressured and intentionally induced petitioner with a promise of probation in order to force him to plead guilty. He alleges in particular, *inter alia*, that counsel promised him probation and the opportunity to withdraw his plea upon the completion of probation, with the understanding that he then would be sentenced instead on a gross misdemeanor.[8]

Respondents contend that "*Martinez* has no application to ground 1 because *Martinez* is a narrow holding that only applies to claims of ineffective assistance of trial counsel." Respondents maintain that Ground 1 "is not a 'substantial claim of ineffective assistance of trial counsel,' it is a substantive claim challenging the voluntariness of Towe's plea."[9]

A fairly substantial argument can be made that the rationale of *Martinez* supports extending the decision as well to a claim that a plea was involuntary because it was improperly induced by trial counsel.[10]

---

[7] With regard to other generally applicable arguments, respondents acknowledge that *Martinez* is binding law in the district court but seek to preserve for later review an argument that the decision should be overruled. Respondents further provide argument as to whether the state procedural rule is an "independent" and "adequate" state law ground for purposes of the procedural default doctrine. It does not appear, however, that petitioner has challenged these points in his opposition to the motion to dismiss. Petitioner would have the burden of producing specific argument challenging these points in the posture presented, so the independence and adequacy of the state law procedural rule is not at issue. *See Bennett*, 322 F.3d at 585. It further is not disputed in the briefing that a Nevada initial state post-conviction proceeding is an initial-review collateral proceeding for purposes of *Martinez*, and the Court is aware of no principled distinction that would suggest otherwise. *See, e.g., Williams v. Crawford*, No. 14-16723 (9th Cir., Oct. 19, 2016)(applying *Martinez* to the Nevada statutory post-conviction framework); *cf. Trevino v. Thaler*, 133 S.Ct. 1911 (2013) (addressing similar statutory framework in Texas).

[8] ECF No. 25, at 9-13.

[9] ECF No. 68, at 7.

[10] Because of how issue is joined on a procedural default defense, respondents' argument on this point was made in their reply, the final submission on the motion to dismiss.

A claim that a plea was involuntary because the plea was improperly induced by trial counsel does not lend itself to a sharp distinction between a substantive claim on the one hand and a claim of ineffective assistance of trial counsel on the other. As the Supreme Court observed on a different issue:

(continued...)

-6-

However, in *Pizzuto v. Ramirez*, 783 F.3d 1171 (9th Cir. 2015), the Ninth Circuit stated emphatically that (a) the Court of Appeals would not extend application of the *Martinez* rule beyond Sixth Amendment claims of ineffective assistance of counsel, and (b) any change in that regard instead would have to come from the Supreme Court:

---

[10](...continued)
> . . . . When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [constitutional] standards [established for effective assistance of counsel.]

*Cf. Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Both the nature of the underlying factual inquiry involved and the importance of the right at stake would argue in favor of treating such a claim similarly to a claim of ineffective assistance of counsel for purposes of *Martinez*. The due process right to a guilty plea being entered only knowingly, intelligently, and voluntarily by the accused similarly would appear to be "a bedrock principle of our justice system," particularly given that far more criminal cases now are resolved by plea rather than trial. *Cf. Martinez*, 132 S.Ct. at 1317.

Moreover, Nevada state practice applies substantially the same procedural framework to a post-sentencing claim challenging the voluntariness of a plea as it does to ineffective-assistance claims. (Petitioner's claim in Ground 1 did not appear to accrue fully prior to his sentencing when he was sentenced to a term of imprisonment rather than to probation.) Under *Martinez* and subsequent authority, an absence of counsel in an initial state post-conviction proceeding potentially can constitute cause for the failure to pursue an ineffective-assistance claim where, *inter alia*, state law either (a) requires that ineffective-assistance claims be raised in collateral review proceedings rather than on direct appeal, or (b) makes it highly unlikely that a petitioner will have a meaningful opportunity to pursue such claims on direct appeal. *See Trevino v. Thaler*, 133 S.Ct. 1911, 1918 & 1921 (2013). Under the exclusive-remedy provision in N.R.S. 34.724(2)(b), a state post-conviction petition provides the exclusive remedy for a challenge to the validity of a guilty plea made after sentencing. *Harris v. State*, 329 P.3d 619, 628 (Nev. 2014). Nevada statutory law thus requires a post-sentence challenge to a plea to be raised in the same manner as an ineffective-assistance claim, in a state post-conviction petition.

*Harris* did overrule contrary prior decisions that instead held that a petitioner alternatively could pursue a post-sentence motion to withdraw guilty plea in the trial court subject to a requirement that he affirmatively overcome a potential laches bar. The *Harris* holding, however, establishes the state supreme court's view as to what the relevant constitutional and statutory provisions always have required. Moreover, both procedural alternatives, when allowed under the then-current jurisprudence, potentially could have been viewed as an initial-review collateral proceeding for purposes of *Martinez*. Neither procedural alternative allowed the criminal defendant to pursue the claim in the first instance on direct appeal. Both alternatives instead constituted "'the first place a prisoner can present a challenge to his conviction'" on this basis. *Cf. Martinez*, 132 S.Ct. at 1315 (quoting *Coleman*).

Accordingly, a substantial argument can be made that the *Martinez* rule should extend to a due process claim that a plea was involuntary because the plea was improperly induced by trial counsel.

> . . . . In *Hunton v. Sinclair*, 732 F.3d 1124, 1126–27 (9th Cir.2013), we denied a petitioner's claim that *Martinez* permitted the resuscitation of a procedurally defaulted *Brady* claim, holding that only the Supreme Court could expand the application of *Martinez* to other areas.
>
> The one exception to that rule is *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1296 (9th Cir.2013), where we held that *Martinez* covered claims of ineffective assistance of appellate counsel, not just ineffective assistance of counsel at trial. However, even in adopting this expansion, we noted that further substantive expansion would not be forthcoming, stating: "[t]he *Martinez* rule is limited to an underlying Sixth Amendment ineffective-assistance claim." *Id.*
>
> We follow *Hunton* and *Nguyen* and decline to extend *Martinez* to cover claims other than ineffective assistance of trial or appellate counsel.

783 F.3d at 1177.[11]

This Court, in turn, follows the binding Circuit precedent in *Pizzuto* and declines to extend *Martinez* to cover a claim that a petitioner was denied due process of law because his plea was involuntary because it was improperly induced by trial counsel.

The Court accordingly holds that Ground 1 is procedurally defaulted.

In Ground 2(A), petitioner alleges that he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments when trial counsel allegedly failed to investigate the facts, interview key witnesses, advise him of a defense strategy, or prepare for trial, despite the existence of evidence, *inter alia*, that the alleged victim had recanted.

Respondents contend that this ineffective-assistance claim is not a "substantial" ineffective-assistance claim under *Martinez* because the plea avoided possible imposition of two life sentences.[12] Under *Martinez*, a petitioner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." 132 S.Ct. at 1318. A claim is

---

[11]*But cf. Hunton*, 732 F.3d at 1127-1131 (Fletcher, J., dissenting)(the dissent argues at length that the rationale of *Martinez* extends also to a *Brady* claim).

[12]ECF No. 68, at 7-8.

-8-

insubstantial if "it does not have any merit or . . . it is wholly without factual support." *Id.*, at 1319; *see also Smith v. Ryan*, 823 F.3d 1270, 1296 (9th Cir. 2016)(similar).

The Court is not persuaded that it should find that the claim is insubstantial on its face for purposes of *Martinez* without a more thorough evaluation of the claim following an answer and reply on the merits. A plea bargain generally avoids a more substantial sentencing exposure, sometimes a significantly more substantial exposure. That does not signify, however, that, *ipso facto*, every ineffective-assistance claim challenging a conviction pursuant to such a plea bargain necessarily is lacking in any merit and thus is not a substantial claim. Petitioner's claim inherently is that he would not have been forced to accept the plea to avoid at least the substantial additional exposure to two life sentences if, allegedly, trial counsel instead had adequately investigated the facts and prepared a meaningful defense. That is not a claim that, on its face, is lacking in any merit on the arguments made to the Court on the present motion.

The Court accordingly defers further consideration of whether Ground 2(A) is procedurally defaulted -- including consideration of whether the claim is substantial and whether petitioner sustained prejudice – until after the filing of an answer and reply on the merits.

In Ground 2(C), petitioner alleges that he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments when trial counsel failed to file a direct appeal despite his request that he do so. When a corresponding claim was before the Supreme Court of Nevada on the first state post-conviction appeal, the state high court noted that the letter that petitioner maintained that he had sent to counsel requesting that he file an appeal was not in the record on the post-conviction appeal.[13] Prior to the federal stay, this Court held on respondents' first motion to dismiss that the claim was unexhausted because petitioner relied upon the letter as an exhibit, placing the claim in a significantly different and stronger evidentiary posture than when the claim was presented to the state high court.

---

[13]ECF No. 26, Ex. 60, at electronic docket page 7.

In opposition to the present motion to dismiss on the basis of procedural default following the stay, petitioner maintains that "appointed counsel would have ensured that [the letter], which was admitted as an exhibit at Towe's evidentiary hearing, was made part of the record on [the first post-conviction] appeal since it would have supported Towe's claim that he asked trial counsel to file an appeal."[14] Petitioner identifies no other manner in which not having counsel in the initial-review collateral proceeding allegedly provided cause for his failure to comply with state procedural requirements and instead fully exhaust Ground 2(C) on the first state petition. The Court is persuaded by respondents' argument that petitioner thus essentially is relying on absence of counsel on the first state post-conviction appeal to attempt to establish cause for the procedural default of this claim. Under both *Coleman* and *Martinez*, the absence of or inadequate assistance of counsel with respect to a state post-conviction appeal does not provide a potential basis for cause. *Coleman*, 501 U.S. at 752 (state post-conviction counsel's failure to file a timely appeal did not constitute cause); *Martinez*, 132 S.Ct. at 1316 & 1320 (the holding does not concern errors in other proceedings "including appeals from initial-review collateral proceedings").

The Court accordingly holds that Ground 2(C) is procedurally defaulted.

In Ground 4, petitioner alleges that he has been denied due process in violation of the Fifth and Fourteenth Amendments because new evidence persuasively demonstrates that he is actually innocent. Given the prior discussion under Ground 1, *supra*, the Court is constrained by the Ninth Circuit's *Pizzuto* decision to hold that the *Martinez* rule does not extend to this non-Sixth Amendment claim. Petitioner otherwise does not rely in his opposition – as to this claim or any other – on the actual-innocence gateway of *Schlup v. Delo*, 513 U.S. 298 (1995), to overcome the procedural default of this claim.[15]

The Court accordingly holds that Ground 4 is procedurally defaulted.

---

[14] ECF No. 61, at 17.

[15] That a freestanding actual-innocence claim exists in noncapital cases has not been conclusively established. *See, e.g., Gimenez v. Ochoa*, 821 F.3d 1136, 1145 (9th Cir. 2016), *cert. petition filed*, No. 16-6041 (Sept. 15, 2016); *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014).

***Exhaustion as to Ground 3***

In Ground 3, petitioner alleges that he was denied "his First, Sixth and Fourteenth Amendment Rights" because the imposition of a special sentence of lifetime supervision constituted a bill of attainder in violation of Article I, § 9, cl. 3, of the Constitution.[16]

Petitioner presented a corresponding claim in his first state post-conviction petition. The Supreme Court of Nevada held as to that claim that the claim was "beyond the scope of a petition for a writ of habeas corpus challenging a judgment of conviction based on a guilty plea," citing to N.R.S. 34.810(1)(a).[17]

On federal habeas review, the Court ultimately appointed counsel on a motion by petitioner filed after respondents' answer. Petitioner thereafter filed a counseled amended petition on May 4, 2009, and respondents moved to dismiss on June 17, 2009. In the motion, respondents did not raise any affirmative defenses as to Ground 3.

Nearly six years later, and after the matter previously had been stayed specifically for the purpose of allowing petitioner an opportunity to exhaust unexhausted claims, respondents raised both exhaustion and procedural default defenses to Ground 3 in an April 16, 2015, motion to dismiss. Respondents subsequently withdrew the procedural default defense in their reply in support of the motion.

Petitioner contends that respondents have waived the exhaustion defense. Petitioner relies on, *inter alia*, the Court's December 18, 2007, scheduling order, which provided:

> . . . . Respondents shall raise all potential affirmative defenses in the initial responsive pleading, including lack of exhaustion and procedural default. **Successive motions to dismiss will not be entertained.** . . . .

ECF No. 3, at 2 (bold emphasis in original).

---

[16] ECF No. 25, at 18. Article I, § 10, cl. 1, perhaps might be more apposite, as it provides in pertinent part: that "No State shall . . . pass any Bill of Attainder . . . ."

[17] ECF No. 26, Ex. 60, at electronic docket pages 7-8. N.R.S. 34.810(1)(a) provides: "The court shall dismiss a petition if the court determines that . . . The petitioner's conviction was upon a plea of guilty or guilty but mentally ill and the petition is not based upon an allegation that the plea was involuntarily or unknowingly entered or that the plea was entered without effective assistance of counsel."

1    If the December 18, 2007, scheduling order had been the controlling order, the Court very well may have been inclined to conclude that respondents – putting issues of waiver under the substantive law to the side – no longer could raise an exhaustion issue as to Ground 3 due to noncompliance with the scheduling order. The purpose of the quoted provision from the order is to preclude exactly what has occurred in this case, serial presentation of defenses years later that instead could have been raised previously.[18] The Court has had habeas matters in the past that literally have taken years longer to adjudicate due in large measure to such serial presentation of defenses.

The December 18, 2007, scheduling order was not the controlling order at the time that respondents filed their June 17, 2009, motion to dismiss, however. The July 24, 2008, scheduling order that directed a response to the counseled amended petition did not include language similar to the prior order restricting serial presentation of defenses in successive motions to dismiss.

Respondents thus have not failed to comply with the controlling scheduling order. The applicable rule therefore is that, "[u]nless a court has ordered otherwise, separate motions to dismiss may be filed asserting different affirmative defenses." *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005); *see also Randle v. Crawford*, 604 F.3d 1047, 1052-53 (9th Cir. 2010)(respondents could raise an untimeliness defense for the first time in a motion to dismiss filed after a stay for exhaustion). The controlling December 18, 2007, scheduling order directing a response to the counseled amended petition – as opposed to the prior order directing a response instead to the *pro se* original petition – did not bar the filing of separate motions to dismiss asserting different affirmative defenses. Respondents therefore could raise different affirmative defenses by separate motions to dismiss.

Respondents otherwise neither have waived nor are estopped from relying upon an exhaustion defense under the governing substantive law. Under 28 U.S.C. § 2254(b)(3), "[a]

---

[18] The Court discusses respondents' stated reason for the late-breaking assertion of the defense *infra*.

-12-

State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." Respondents have not expressly waived the requirement.[19]

On the exhaustion defense, respondents contend that petitioner did not exhaust the claim with the first state petition because, given N.R.S. 34.810(1)(a), he did not present the claim to the state courts via a procedural vehicle in which the merits of the claim would be considered. *See Castille v. Peoples*, 489 U.S. 346, 351(1989)(presenting a claim in a procedural context in which the merits of the claim will not be considered, or will be considered only in special circumstances, does not constitute fair presentation of the claim). Respondents rely upon discussion in the March 27, 2014 decision in *Coleman v. State*, *supra*, regarding other possibly available procedural avenues purportedly for challenging a special sentence of lifetime supervision – in at least some respect. *See* 321 P.3d at 867.[20]

*Coleman* does not clearly establish what, if any, remedies remain available under Nevada state practice for a petitioner who entered a plea to challenge the imposition of a special sentence of lifetime supervision on constitutional grounds. No such challenge was presented in *Coleman*. Rather, "[s]everal years after commencing lifetime supervision, Coleman filed a post-conviction petition for a writ of habeas corpus, asking the district court to release him from lifetime supervision or strike the lifetime supervision requirement." 321 P.3d at 865. After holding that a post-conviction petition was not available pursuant to N.R.S. 34.724(1) because the underlying sentence had expired, the court stated:

---

[19] Nothing in *Wood v. Milyard*, 132 S.Ct. 1826 (2012), which concerned an untimeliness defense, purports to – or could – override the clear Congressional directive in § 2254(b)(3). The Supreme Court's references to exhaustion in the course of its discussion in *Wood* do not in any sense suggest that the facts presented in this case would lead to a waiver or estoppel of an exhaustion defense despite § 2254(b)(3).

[20] With regard to waiver of the exhaustion defense, respondents urged that their exhaustion argument "should not be considered waived because *Coleman*, which solidified that Towe retains a procedural avenue for presenting ground 3 in state court, was not decided until 2014, while Respondents filed their motion to dismiss in 2009." ECF No. 68, at 10. Respondents thus in effect maintain that the then *pro se* petitioner should have pursued remedies in 2005 through 2007 that respondents' counsel – attorneys practicing in the area of challenges to Nevada state convictions and sentences – maintain that they reasonably could not be aware of prior to the 2014 decision in *Coleman.*

> Coleman contends that he is left without a remedy if he cannot challenge his sentence and conditions of lifetime supervision in a post-conviction petition for a writ of habeas corpus. Even assuming this was correct, the post-conviction petition for a writ of habeas corpus is a creature of statute and we cannot ignore the plain language of NRS 34.724(1) that restricts its use. The State acknowledges that while traditional post-conviction relief is not available, Coleman could still pursue injunctive relief pursuant to NRS 33.010. Although we do not attempt to catalogue the panoply of remedies available to challenge *the conditions of* lifetime supervision including the extent to which *the conditions* could be challenged in defense of a charge under NRS 213.1243(8) for violating a condition of lifetime supervision, we note that some challenges *to those conditions* may be pursued in a civil rights action under 42 U.S.C. § 1983. Nevada law also provides a means for Coleman to petition to be released from lifetime supervision *if he meets certain conditions*. NRS 176.0931(3). Coleman therefore is not left without a remedy.

321 P.3d at 867 (emphasis added).

The Court is not persuaded that the foregoing portion of *Coleman* clearly establishes that remedies remain available under Nevada state practice for a petitioner who entered a plea to challenge the imposition of a special sentence of lifetime supervision on constitutional grounds. *Coleman* discusses the ability to challenge or request release from *conditions* of such a special sentence, on occasion then subject to conditions. *Coleman* does not discuss the appropriate remaining procedural avenue, if any, for a petitioner to challenge the constitutionality of a sentence of lifetime supervision where he is convicted pursuant to a plea. None of the state statutes cited in *Coleman* reflect on their face that a petitioner would be able to pursue such a challenge under the statute under Nevada state practice.[21]

---

[21]*Coleman* also refers to an action under 42 U.S.C. § 1983, which of course is a remedy under federal law rather than state law. There of is no requirement that a habeas petitioner pursue an argued-to-be-possible § 1983 action that could be filed in either state or federal court in order to satisfy the exhaustion requirement for a federal habeas action. Habeas and § 1983 actions are, in the main, mutually exclusive remedies.

In that vein, respondents urge – for the first time in the reply on the motion to dismiss – that Ground 3 is not cognizable in a federal habeas proceeding because "the appropriate posture for presenting a challenge regarding lifetime supervision is through an action filed under 42 U.S.C. § 1983." ECF No. 68, at 10 n.7. Respondents rely on this Court's decision in *Ingebretson v. Palmer*, No. 3:07-cv-00251-LRH-RAM, ECF No. 116 (D. Nev., Sept. 9, 2015). *Ingebretson* is inapposite. The pertinent claim in that case challenged certain

(continued...)

The Court emphasizes that, unlike *Coleman*, the issue here is not that Ground 3 was asserted in state court after expiration of the underlying sentence of imprisonment. Ground 3 instead was rejected while Towe still was under a sentence of imprisonment because the claim exceeded the scope of claims that could be considered under N.R.S. 34.810(1)(a) when the petitioner was convicted on a plea. The pertinent issue here is not what remedies would be available to a petitioner to challenge the conditions of a special sentence of lifetime supervision after the expiration of his underlying sentence. The pertinent issue instead would be what remedies any petitioner convicted pursuant to a plea would have – before or after the expiration of the underlying sentence of imprisonment – to challenge the constitutionality of a special sentence of lifetime supervision. Respondents did not address such an issue in their briefing in support of the motion to dismiss.

On the showing and arguments made, the Court holds that the exhaustion requirement is constructively satisfied under § 2254(b)(1)(B) either because there is an absence of available state corrective process as to this claim or, alternatively, because circumstances exist that render such process ineffective to protect the rights of the petitioner. Those circumstances include the overall long delay already involved in this case, the late-breaking serial presentation of the exhaustion defense nearly six years after it could have been raised, and the still-continuing uncertainty as to what, if any, remedies are available in the state courts on this claim. *Cf. Coe v. Thurman*, 922 F.2d 528 (9th Cir. 1991)(excessive delay).

---

[21](...continued)
*conditions* of petitioner's lifetime supervision, not the constitutionality of the imposition of lifetime supervision in the first instance. The Court held that the claim was cognizable in a § 1983 action rather than a habeas action because "[s]uccess in challenging these conditions would not result in an earlier release from custody *because he would still be subject to lifetime supervision*." *Id.*, at 5 (emphasis added). Exactly the opposite situation instead is presented in this case. If Towe were successful on Ground 3, he no longer would be subject to lifetime supervision because the special sentence would be vacated. He is challenging the special sentence itself, not just certain conditions therein. As the Court referenced in note 1, *supra*, the Court has concluded in prior litigation that the restraints imposed under a special sentence of lifetime supervision can satisfy the custody requirement for federal habeas jurisdiction. The Court also ultimately reached that same conclusion in *Ingebretson*. *See Ingebretson*, *supra*, at 2, lines 18-24. If being subject to lifetime supervision satisfies the custody requirement for federal habeas jurisdiction in a habeas action, then, most assuredly, a constitutional challenge seeking to entirely vacate the special sentence of lifetime supervision is a cognizable claim in the habeas proceeding rather than in a § 1983 action. The discussion in *Ingebretson* is fully in accord with that conclusion.

No other defenses are before the Court as to Ground 3, as respondents withdrew their procedural default defense to the claim.

This case needs to be brought to a final resolution. The Court will not entertain any further serial arguments about how affirmative defenses possibly might apply in this nearly decade-old federal habeas case, well after the expiration of the underlying sentence of imprisonment. There comes a time when all litigation needs to be brought to a resolution, and that time has been – at the very least – reached in this action.

Respondents accordingly shall respond to Ground 3 on the merits, on a *de novo* review.[22]

IT THEREFORE IS ORDERED that respondents' motion (ECF No. 58) to dismiss is GRANTED IN PART and DENIED IN PART, such that Grounds 1, 2(C), and 4 are DISMISSED with prejudice as procedurally defaulted.

IT FURTHER IS ORDERED that, within forty-five (45) days of entry of this order, respondents shall file an answer to the remaining claims on the merits. Respondents shall respond to Ground 2(B) under the standard of review in 28 U.S.C. § 2254(d) and shall respond to Grounds 2(A) and 3 under a *de novo* standard of review. The response on the merits on Ground 2(A) will be subject to the reserved issues on the procedural default defense to the claim, which are substantially intertwined with the merits. The answer accordingly shall fully address the claim on the merits under the *de novo* standard of review.

IT FURTHER IS ORDERED that petitioner may file a reply to the answer within forty-five (45) days of service.

---

[22]The Court suspects that the resolution of the claim on the merits – however it ultimately may be resolved – may take less ink than has been spilled on possible procedural defenses to the claim.

The Court notes that petitioner alleges in the amended petition that "[t]he imposition of the sex offender lifetime supervision clause violates [petitioner's] right against a bill of attainder and numerous constitutional violations." ECF No. 25 at 19. The reference to "and numerous constitutional violations" lacks the specificity required in habeas pleading and asserts no viable claims in this case, where the pleadings are closed. The only arguably sufficiently specific constitutional claim before the Court under Ground 3 is a claim that the imposition of the special sentence of lifetime supervision violated a constitutional prohibition against a bill of attainder.

Given the overall age of this action, and absent extraordinary circumstances, any requests for extension based upon scheduling conflicts between this case and other cases in this Court should be sought in the earlier-filed case (ignoring intervening closings and reopenings), unless counsel have been made aware that the other case or matter would be reportable under the Civil Justice Reform Act at the next reporting date and this case would not.[23]

DATED: October 26, 2016

_____
KENT J. DAWSON
United States District Judge

---

[23] For counsel's reference, this reopened action would be reportable on the March 31, 2018, CJRA report if it were not fully resolved by a final judgment in the district court prior to that time. The Court's concern as to this case is not with reporting for the Act but instead with the overall age of the case.