UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

MICHAEL LEE TOWE,

      Petitioner,

v.

DIRECTOR, NDOC, *et al.*,

      Respondents.

Case No. 2:07-cv-00652-KJD-PAL

ORDER

  This counseled habeas matter comes before the Court for consideration of the surviving claims of the first amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 25). Respondents have answered (ECF No. 70), and petitioner has replied (ECF No. 75).

**Background**

  Petitioner in this action challenges his state court conviction, pursuant to a guilty plea, of attempt lewdness with a minor under the age of fourteen. (Exs. 15 & 17).[1]

  Petitioner was initially charged with two acts of lewdness with a minor under the age of 14. The charges arose out of allegations made by C.N., the nine-year-old daughter of petitioner's live-in girlfriend, in September 2004. (Ex. 2). At that time, C.N. told her school guidance counselor that petitioner had touched her vaginal area over her clothes and fondled her chest under her shirt. (*Id.*) Interviewed a day later by a CPS worker, C.N. stated that petitioner called her out of her bedroom, started to kiss her, and said "Do you love me?" to which C.N. replied "yes." (*Id.*)

---

[1] The exhibits cited in this order are located at ECF Nos. 26 and 51.

1

Then, petitioner pulled down C.N.'s shirt, touched her breasts and touched over her clothing on her vagina. (*Id.*) Petitioner was interviewed and admitted to touching C.N. on her breasts and vagina over her clothing while having a conversation with her about boys. (*Id.*)

A criminal complaint charging petitioner with two counts of lewdness with a minor under the age of 14 was filed on March 3, 2005, and petitioner was arrested on April 11, 2005. (Exs. 3 & 5). On April 26, 2005, petitioner waived his preliminary hearing and stated an intent to enter a plea of guilty to a single reduced charge of attempt lewdness with a minor. (Ex. 9). The parties agreed that if petitioner received a "favorable" psycho-sexual evaluation the State would not oppose probation, and if he completed probation successfully he would be allowed to withdraw his plea and plead to a lesser, gross misdemeanor with a sentence of time served. (*Id.*) Pleading to the lesser gross misdemeanor would have allowed petitioner to avoid lifetime supervision pursuant to Nevada Revised Statutes § 176.0931.

On May 3, 2005, petitioner appeared before the district court and entered a plea of guilty to attempt lewdness. (Ex. 14). Petitioner indicated that he understood that if he received a favorable psycho-sexual evaluation that the State would not oppose probation, and that if he completed probation successfully he would be allowed to withdraw his plea and plead to a lesser, gross misdemeanor with a sentence of time served. (*Id.* (Tr. at 2-3)).

At petitioner's sentencing on June 27, 2005, the State represented that one psychosexual evaluation came back moderate-to-low risk and the other came back moderate-to-high risk. (Ex. 16 (Tr. 2)). The court opted to sentence petitioner to a prison term of 24 to 60 months, concurrent to another sentence he was set to receive the following day, required petitioner to register as a sex offender, and imposed lifetime supervision pursuant to § 176.0931. (*Id.* at 5).

On February 4, 2005, before charges were filed and petitioner was arrested, C.N. was interviewed by a CPS officer. C.N. told the officer that she had "lied about the abuse because she wanted to get her mother and n[atural ]father back together." (Ex. 24). Another CPS report dated March 4, 2005, noted that C.N. "had since recanted [her] allegations."[2] (*Id.*) At some point, C.N.

---
[2] Petitioner asserts that this was a second recantation. However, it is not at all clear to the Court that the second report documents a second interview with C.N. Rather, as the second report is a statement of probable cause setting forth a basis for removal of C.N. and her siblings from her mother's home, it appears likely that the reference to

2

claims, she told petitioner's trial counsel that she had made up the allegations. (Ex. 49). A month after petitioner's sentencing, C.N. signed a notarized affidavit denying the allegations and admitting that she lied in order to get petitioner out of the picture and her biological parents back together. (Ex. 49). In 2009, she signed a similar declaration. (Ex. 67). In her more recent declaration, C.N. explained that petitioner had been telling her which areas of her body boys shouldn't touch, and did so by touching her neckline, non-sexually, and hovering his hand over her vagina. (Ex. 67).

**Standard**

28 U.S.C. § 2254(d) provides the legal standards for this Court's consideration of the merits of the claims that have been previously decided by or presented to the state's highest court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for

---

C.N.'s recantation is a reference to a prior recantation, such as the February 4, 2005, recantation. (*See* Ex. 24 at 4-5).

3

evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted.)

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Andrade*, 538 U.S. 63 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Id.* at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

4

As the Court held in its order on respondents' motion to dismiss, deferential review applies only to Ground 2(B), while Grounds 2(A) and 3 are subject to *de novo* review. Although the parties dispute the standard of review as to each of the three remaining claims, the Court finds their arguments unnecessary to resolve. Its determination as to each claim is the same whether under deferential or *de novo* review.

**Analysis**

Three claims remain for review on the merits.[3] In Ground 2(A), petitioner asserts that trial counsel was ineffective for failing to investigate facts, interview key witnesses, advise him of defense strategy, or prepare for trial. In Ground 2(B), petitioner asserts that counsel was ineffective for advising him to plead guilty when petitioner was actually innocent. And in Ground 3, petitioner asserts that his lifetime supervision is an unconstitutional bill of attainder and violates various other constitutional rights.

I. Ground 2(A)

In Ground 2(A), petitioner asserts that trial counsel was ineffective for failing to investigate facts, review discovery, interview key witnesses, advise petitioner of defense strategy, or prepare for trial.[4] Petitioner argues that had counsel investigated his case prior to advising him to plead guilty, counsel would have discovered evidence that petitioner was actually innocent of the offenses with which he had been charged – namely documentation that C.N. had told DFS that the allegations were untrue and the fact of C.N.'s unwavering stance with respect to her recantation. If counsel had uncovered this evidence or told petitioner about it, petitioner asserts that he would have rejected the plea offer and proceeded to trial.

The Court previously found this claim exhausted but procedurally defaulted and deferred until the merits determination whether petitioner could establish cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012) for the default. In *Martinez*, the Supreme Court held that

---

[3] Grounds 1, 2(C) and 4 were dismissed as procedurally defaulted by the Court's order of October 26, 2016.
[4] In his petition, petitioner contends that counsel reviewed only a brief police report before advising petitioner to plead. Respondents argue that this contention is belied by one of the victim's statements, in which she says she told defense counsel that her allegations were lies. (Ex. 49). Whether counsel reviewed only the police report or whether he also interviewed the victim before advising petitioner to plead is not, under the circumstances of this case, dispositive of the Court's determination.

5

cause for a procedural default may sometimes be established where a substantial claim of ineffective assistance of trial counsel was not raised in initial-review collateral proceedings due to either the absence or the ineffectiveness of post-conviction counsel.[5] *Id.* at 16-17. The question of whether petitioner can establish cause depends on whether he has a "substantial" claim of ineffective assistance of trial counsel, which question is intertwined with the merits of the claim itself.[6]

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief— deficient performance by counsel and prejudice. 466 U.S. at 687. With respect to the performance prong, a petitioner must carry the burden of demonstrating that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688. "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted). In assessing prejudice, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Strickland*, 466 U.S. at 696. In the context of a guilty plea, the petitioner generally must show that but for counsel's poor performance, he would have rejected the plea and proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Where counsel's alleged deficiency is a failure to investigate exculpatory evidence, the question is whether the undiscovered evidence would have changed counsel's recommendation to plead, which depends in large part on a prediction as to whether the new evidence would have changed the outcome of a trial. *Id.* at 59.

Petitioner argues that the victim recanted her allegations twice in interviews with the Department of Family Services before petitioner changed his plea, and that she has remained

---

[5] In order for the *Martinez* exception to apply, it must also be true that "the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'" and that state law does not allow a petitioner to raise -- or provide a meaningful opportunity to present -- an ineffective assistance of trial counsel claim on direct appeal. *See Trevino v. Thaler*, 569 U.S. 413, 423 (2013). That petitioner satisfies these requirements in this case is not in dispute.

[6] Petitioner did not have counsel on his first state habeas petition and therefore automatically satisfies the second prong of this inquiry. *See Trevino*, 569 U.S. at 423.

steadfast her in recantation throughout the years.[7] (Exs. 24, 49 & 67). Petitioner argues that had counsel investigated his case, he would have discovered evidence to support the victim's recantation, and if counsel had told petitioner about the recantation, petitioner would not have elected to plead guilty and instead would have proceeded to trial. Likewise, he argues, without the victim's testimony as to the allegations, petitioner would not have been convicted at trial. Petitioner argues that counsel's failure to investigate had no strategic purpose and was not reasonable.

On the record before the Court and the arguments made, petitioner has not established that his counsel's conduct fell below the wide range of reasonable representation. Counsel obtained for petitioner a deal which allowed for the possibility of no prison time and a conviction of only a gross misdemeanor. The latter would have avoided lifetime supervision. Given that petitioner faced up to life in prison if convicted and wanted to avoid lifetime supervision, the Court can scarcely conceive of a better result for petitioner.[8] Petitioner has not established that the offer would have remained open had counsel asked for more time to investigate, particularly as it is probable the offer was extended in exchange for waiver of the preliminary hearing. Under such circumstances, the Court cannot find deficient counsel's decision to recommend a plea without first conducting an extensive investigation.

Nor does the Court find any prejudice. While an investigation would have turned up the victim's recantation, this evidence is hardly unassailable. The recantation must be considered in view of the petitioner's relationship with the victim's mother and the victim herself, both of which could have prompted the victim to retreat from her story even if it were true. In addition, petitioner admitted that he had touched the victim on her chest and her vagina, over her clothes – albeit in a nonsexual manner. (*See* Ex. 2). Further, it seems quite likely that all parties *were* aware of the recantation when they settled on their plea agreement, given that the offer extended to petitioner was extremely favorable. Faced with life in prison and the very real possibility that the victim might not stand by her recantation, as well as the petitioner's admission to touching the victim

---

[7] *But see supra* n.2.

[8] Towe and his trial counsel have both testified that they took the plea because it offered an opportunity to avoid lifetime supervision and the potential of life in prison. (Ex. 44 (Tr. at 5-6 & 8)).

7

over her clothes, the Court is not persuaded that petitioner would have rejected the offer and proceeded to trial. The Court is also not persuaded that further investigation would have changed counsel's recommendation to plead. It was by no means certain that the victim's recantation would have changed the result of a trial, given the petitioner's own admission and the questions that could have been raised about the victim's recantation. Rather than risk the possibility of a much longer sentence, it is likely that counsel still would have advised petitioner to enter the plea.

For all these reasons, the Court concludes that petitioner's claim is wholly without merit and thus is not a substantial claim of ineffective assistance of trial counsel. Petitioner cannot overcome the procedural default of Ground 2(A), and the claim must therefore be dismissed.[9]

II. Ground 2(B)

In Ground 2(B), petitioner asserts that counsel was ineffective for advising him to plead guilty when petitioner was actually innocent. This claim largely overlaps with Ground 2(A).

The Nevada Supreme Court rejected this claim as follows:

> [A]ppellant claimed that counsel was ineffective for advising him to enter a guilty plea when he was actually innocent. "[A]ctual innocence' means factual innocence, not mere legal insufficiency." To establish actual innocence, the petitioner must show that "it is more likely than not that no reasonable juror would have convicted him." In support of his claim, appellant presented the court with documents that discussed the victim's recantation of her statement accusing appellant of lewd acts. Appellant did not demonstrate that these documents were not available at an earlier date. Furthermore, the documents presented demonstrate that the victim's recantation was suspect. Our review of the record reveals that the district court did not err in denying this claim as appellant failed to demonstrate that his claim of actual innocence was sufficiently established by the evidence presented.

(Ex. 60 at 5-6).

The petitioner's evidence of his actual innocence is not compelling, for the reasons discussed above. The Nevada Supreme Court's conclusion that petitioner had not established his actual innocence is not therefore objectively unreasonable. However, even under *de novo* review, petitioner is not entitled to relief. As petitioner's actual innocence is far from clear and he faced substantial penalties if he rejected the plea and substantial benefits if he took it, it was within the

---

[9] For obvious reasons, even if Ground 2(A) states a substantial claim of ineffective assistance of counsel sufficient to overcome the default, the Court will still find the claim without merit and petitioner not entitled to relief.

8

wide range of reasonable representation for counsel to recommend the plea. For the same reason, it is improbable that petitioner would have opted to reject the plea.

Petitioner is not entitled to relief pursuant to Ground 2(B) of the petition.

III. Ground 3

In Ground 3, petitioner asserts that his lifetime supervision violates the Constitution's proscription against "bill[s] of attainder." U.S. Const. Art. 1, § 10. Petitioner also asserts that his lifetime supervision violates "numerous constitutional rights" including those under the First, Fifth, Sixth and Fourteenth Amendments. (ECF No. 25 at 18-19). However, apart from the allegation that his supervision violates the proscription against bills of attainder, petitioner does not explain how any other constitutional right, including those under the First, Fifth, Sixth and Fourteenth Amendments, is violated by lifetime supervision. To the extent petitioner might be raising any claim beyond the "bill of attainder" allegation, petitioner has failed to state a claim.

Petitioner was sentenced to lifetime supervision pursuant to Nev. Rev. Stat. § 176.0931, which requires such supervision for all defendants convicted of a sexual offense, as defined by the statute. Petitioner argues that § 176.0931 is an unconstitutional bill of attainder because it impermissibly imposes punishment on a specified group of people – sex offenders -- without a judicial trial.

"[L]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of attainder prohibited by the Constitution." *United States v. Lovett*, 328 U.S. 303, 315 (1946). "Three requirements must be met to establish a violation of the bill of attainder clause: '[S]pecification of the affected persons, punishment, and lack of a judicial trial.'" *United States v. Munsterman*, 177 F.3d 1139, 1141 (9th Cir. 1999).

In *Munsterman*, the Ninth Circuit found that a statute prohibiting sale of firearms to persons under a felony indictment was not an unconstitutional bill of attainder because it failed to satisfy the specificity requirement. Specifically, the court held that the rule was "generally applicable to all persons possessing a certain characteristic, *i.e.*, having been indicted for a felony" that was "reasonably calculated to achieve a nonpunitive public purpose, *i.e.*, to keep firearms out of the

hands of persons who, having been indicted for felonies, may 'have a somewhat greater likelihood than other citizens to misuse firearms.'" *Id.* at 1142.

While the group targeted by § 176.0931 is narrower than the group at issue in *Munsterman,* this difference is not dispositive. It remains a rule "generally applicable to all persons possessing a certain characteristic, *i.e.*," having been convicted of a felony sex offense, that was "reasonably calculated to achieve a nonpunitive public purpose, *i.e.,*" to monitor former sex offenders, which as a group are more likely to recidivate. *See Palmer v. State*, 59 P.3d 1192, 1195 (2002). Petitioner therefore cannot satisfy the specificity requirement in this case.

Nor can petitioner establish the third requirement: lack of a judicial trial. Petitioner was sentenced to lifetime supervision after pleading guilty to criminal charges.

Accordingly, petitioner's lifetime supervision pursuant to § 176.0931 does not violate the Constitution's prohibition of bills of attainder. Petitioner is not entitled to relief on Ground 3.

**Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

The Court has considered the issues raised by petitioner and determines that none meet that standard. The Court will accordingly deny petitioner a certificate of appealability.

**Conclusion**

In accordance with the foregoing, IT IS ORDERED that Ground 2(A) of the petition is DISMISSED WITH PREJUDICE as procedurally defaulted.

IT IS FURTHER ORDERED that the first amended petition for writ of habeas corpus (ECF N0. 25) is DENIED, and this habeas action is therefore DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Court DENIES petitioner a certificate of appealability.

IT IS FURTHER ORDERED that the Clerk of Court shall enter final judgment accordingly and close this case.

Dated this 31st day of July, 2018.

_____
KENT J. DAWSON
UNITED STATES DISTRICT JUDGE